FIRST NATIONAL BANK OF CROOKSTON, MINNESOTA, Appellee,
v. P. B. OSBORN, Appellant.

**Fraud:** FALSE REPRESENTATIONS OF VALUE: BURDEN OF PROOF: EVIDENCE.
1 Courts will indulge in no presumption of fraud and deceit in the making of a contract, but the burden is based upon the party alleging such wrong to establish the fact; and this burden is not met by an equivocal showing, or one fairly consistent with the good faith of the parties. In the instant case the evidence in support of alleged fraudulent representations as to the value of land, pleaded in defense to a suit on a check given for part of the purchase price, is held insufficient to make a case for the jury, and the court was justified in directing a verdict for the plaintiff.

**Negotiable instruments:** BANK CHECKS: RIGHTS OF TRANSFEREE. The
2 transferee of a check, taken without notice of any infirmity therein, cannot be affected by subsequent transactions between the maker and the payee, rescinding a contract for which the check was given in part performance.

*Appeal from Hamilton District Court.*—HON. R. M.
WRIGHT, Judge.

THURSDAY, JULY 3, 1913.

PLAINTIFF brings this action at law to recover upon a check issued to A. M. Ingersoll upon the State Bank of Ells-

worth, Iowa, and by said payee indorsed to the plaintiff. The defendant admits issuing the check to Ingersoll, but denies plaintiff's right to recover thereon because of alleged fraud practiced upon defendant by Ingersoll in procuring the same. He also denies that plaintiff is a good-faith holder of the check. There was a trial to a jury, and at the close of the testimony the court directed a verdict in plaintiff's favor. From the judgment entered on such verdict, the defendant appeals.—*Affirmed.*

*Wesley Martin* and *A. N. Boeye,* for appellant.

*C. H. Van Law* and *John D. Porter,* for appellee.

PER CURIAM.—The appeal turns upon two questions: First, Is defendant's showing in support of his charge of fraud in the inception of the check sufficient to take that issue to the jury? and second, Is there evidence upon the question of good faith of the plaintiff in acquiring said check sufficient to require its submission to the jury? If the first question is answered in the negative, it will be unnecessary to examine the second, and the judgment below must be affirmed. The answer states that the check in controversy was issued in part payment upon a contract for the purchase of land in the state of Minnesota. He further states that at the time of such purchase he lived in the state of Iowa, and was ignorant of the character and value of the land, and that to induce him to enter into the contract Ingersoll falsely and fraudulently represented the land to have a market value of $50 per acre, when in truth and in fact such value did not exceed $25 per acre. He avers that he relied upon such representations, and was deceived thereby to his great damage.

After an examination of the record we are forced to the conclusion that defendant failed to make a case for the jury upon his plea of fraud in the inception of the check in suit. He had been raised a farmer, and had owned and con-

trolled farm lands, though during the last twelve years he had been operating a flour mill in Hamilton county, Iowa. Shortly prior to the transaction in question he had conceived the idea of exchanging his interest in the mill property and business for land, and with that end in view went to Crookston, Minn., where he came into contact with Ingersoll, a real estate agent or dealer. Ingersoll showed him several tracts of land, and finally directed his attention to a half section owned by himself, which he said was worth $50 per acre. ·Plaintiff examined the land, and a contract for the exchange was finally executed, Ingersoll taking the mill property at an agreed valuation to apply upon the sale price of the land reckoned at $50 per acre. As part of the consideration for the land defendant made and delivered the check in suit to Ingersoll, who turned it over to the plaintiff bank, and received credit therefor on his checking account. As a witness, the only representation of value which defendant attributes to Ingersoll is a statement made by the latter to the effect that the land "was worth $50 per acre." Of his own knowledge upon the subject he says: "I had no knowledge of the value of lands in the vicinity of Crookston before going there, and ·had no knowledge except what I acquired there. My contact while there _was almost entirely with land men that I was dealing with, John Boyd and Ingersoll. Ingersoll made the statement as to the value of the land. I relied very largely upon his statement as to its value." This testimony· is by no means unequivocal. He does not say what knowledge upon the subject he "acquired there"; and, while his "contact" while there was "almost" entirely with· land men, Boyd and Ingersoll, he does not disclose with what other persons he talked, or what he learned from such sources. He does not say that he relied solely upon Ingersoll's statements, but "very largely." Indeed the careful reserve and qualifications which mark his testimony at this point forces the inference that he did not blindly stakes his confidence upon Ingersoll's vague assertion that the land was "worth $50 per acre." It would appear

rather that, having examined the land for himself, and acquiring such information as was readily obtainable concerning its value, and having secured an agreement by which he could turn in his mill property at a satisfactory exchange price, he was willing to proceed and did proceed upon his own judgment to make the contract and to issue his check in performance thereof.

Fraud and deceit will not be presumed, and the party charging such wrong assumes the burden of proving it. This burden is not satisfied by a showing which is at best equivocal or is fairly consistent with the theory of good faith on the part of all parties to the transaction. Even if the record were such that a jury could properly find an unequivocal representation by Ingersoll that the land had a market value of $50 per acre, and that defendant relied thereon, we would still be compelled to hold that there is no evidence on which to base a finding that such representation was not literally true. It is hardly too much to say that the record in this respect is chiefly remarkable for what it does not disclose. Crookston, in the vicinity of which the land is situated, is a city of considerable size, and we may safely assume has the usual average of men of honesty, intelligence, and qualification who could speak with authority upon the market value of this land. We may also assume that the immediate neighborhood of this particular tract is not without farmers and landowners having knowledge of its quality and value, yet defendant offers no evidence whatever from these reliable sources. The one and only witness offered by him is one Normandin, his neighbor residing in Hamilton county, Iowa, who testifies that about the time of this transaction he went to Crookston on a brief land-hunting trip, and that while there he was shown the half section which is here in controversy, and he gives as his opinion that its market value was $25 per acre. To qualify himself to testify on the subject he says: "I speak several languages, and when I would meet a man, I thought it was my business, and I would talk to the

1. FRAUD: false representations of value: burden of proof: evidence.

men in different languages, to get direct information from a farmer, better than I get from a land agent. I speak French, German, and Welch. Q. In that way did you learn what the value of lands were about Crookston at that time? A. Yes, I did.'' Just what the witness said or inquired about when he would ''meet a man,'' and the exact nature of the ''direct information'' which he obtained from a farmer, is left involved in the clouds of uncertainty, except as was thereafter drawn from him by the suggestive.question from counsel that in this way he learned the ''value of lands about Crookston.''

Such testimony is insufficient to raise an issue of fraud to invalidate a written contract, or to require any counter showing by the plaintiff. The defendant himself does not attempt to testify that the land is not fairly worth what he supposed its value to be when he entered into the contract. If upon this showing a jury should find that the defendant's execution of the contract was obtained by false and fraudulent representation of the market value of the land, we think it would have been the duty of the trial court to set aside the verdict. Such being the case, there was no error in directing a verdict for the plaintiff.

2. NEGOTIABLE INSTRUMENTS: bank checks: rights of transferee.

This conclusion renders it unnecessary for us to discuss other issues argued by counsel.

If the contract of sale or exchange is not shown to have been tainted by fraud, the bank took the check with no burden of showing affirmatively the good faith of its holding. The check was a valid instrument of exchange, and, having been negotiated to a third party without notice, as quite conclusively appears, any subsequent transaction between defendant and Ingersoll by which it is alleged the contract of exchange was rescinded could not affect the rights of the plaintiff already acquired.

We find no error in the record, and the judgment of the district court is *Affirmed.*